UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| GAE L. FOWLER, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:13-cv-01092-TWP-MJD |
| CAROLYN W. COLVIN Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## ENTRY ON JUDICIAL REVIEW

Plaintiff, Gae L. Fowler ("Ms. Fowler"), requests judicial review of the final decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act").[1] For the reasons set forth below, the Court **REVERSES** and **REMANDS** the Commissioner's decision for additional proceedings.

## I. BACKGROUND

### A. Procedural History

On April 7, 2009, Ms. Fowler filed an application for DIB, alleging a disability onset date of April 30, 2003. Ms. Fowler's claim was denied initially on September 8, 2009, and upon reconsideration on November 19, 2009. Thereafter, Ms. Fowler filed a written request for a hearing, and a hearing was held on May 25, 2011, before Administrative Law Judge John H. Metz ("the ALJ"). Ms. Fowler was represented by attorney Otis Darby at the hearing. Also appearing

---

[1] In general, the legal standards applied are the same regardless of whether a claimant seeks Disability Insurance Benefits or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations of statutes or regulations found in quoted decisions.

at the hearing were medical expert Dr. Lee Fischer, M.D. ("Dr. Fischer"), and vocational expert Constance R. Brown ("the VE"). On June 10, 2011, the ALJ issued a decision denying Ms. Fowler benefits. On May 11, 2013, the Appeals Council denied Ms. Fowler's request for review of the ALJ's decision, thus making it the final decision of the Commissioner for purposes of judicial review. Ms. Fowler filed this civil action, pursuant to 42 U.S.C. § 405(g), for review of the ALJ's decision.

**B.  Factual Background**

Ms. Fowler was 42 years old at the time of her alleged onset date of April 30, 2003. She has a bachelor's degree and has completed part of her master's degree, and has past relevant work as a financial control officer.[2] Ms. Fowler has been receiving long-term disability benefits through her former employer since April 30, 2003. Upon her application for social security benefits, and on subsequent appeals, Ms. Fowler alleged problems with facial pain, fibromyalgia, hypothyroidism, and degenerative disc disease of the lumbar spine. However, her appeal is primarily based upon the ALJ's conclusions as they relate to her fibromyalgia.

On July 10, 2003, Ms. Fowler was seen for an initial rheumatology evaluation by Dr. Denise K. Thornberry, M.D. ("Dr. Thornberry") due to left sided facial pain, and aching in her joints involving her back, feet, ankles, shoulders, arms and hands which was becoming progressively worse with time. Upon examination, Dr. Thornberry noted give way weakness on muscle testing proximally, and atrophy between the first and second fingers on the left hand with weakness of thumb apposition. Dr. Thornberry also noted that Ms. Fowler had tenderness of 18 out of 18 trigger points, and had evidence on physical examination of fibromyalgia. On August 5,

---

[2] The ALJ refers to this position simply as a "controller."

2003, Ms. Fowler followed up with Dr. Sherry Reid, M.D. for a neurological evaluation for her fibromyalgia, vertigo, and limb numbness.

On January 12, 2004, Dr. Lori L. Fuqua, M.D. ("Dr. Fuqua") stated in a letter addressed to Ms. Fowler's long-term disability insurance provider, Mutual of Omaha, that Ms. Fowler suffered from a mixed connective tissue disease, as well as fibromyalgia and recurrent parotiditis. Dr. Fuqua noted that Ms. Fowler had chronic pain as a result of these conditions, which required high doses of narcotics for pain control. Dr. Fuqua also stated that she had referred Ms. Fowler to "many specialists and they all concur with these diagnoses." Filing No. 12-18, at ECF p. 39. It was Dr. Fuqua's opinion that Ms. Fowler should not operate a motor vehicle or machinery, has difficulty with day-to-day activities, and is unable to maintain any type of full time or scheduled employment.

On May 12, 2004, Ms. Fowler visited rheumatologist Dr. Stephen R. Pfeifer, M.D. ("Dr. Pfeifer") for evaluation of her fibromyalgia. He noted that she had chronic daily fibromyalgia pain diffusely throughout her muscles, and was seeing a chronic pain doctor. Ms. Fowler told Dr. Pfeifer that she was on disability but wanted to get back to work in her prior job as a financial control officer, so she was looking for new ideas for treatment. He noted that, on an average day, her pain levels were 9 out of 10, and her fatigue was 5 out of 10. Upon examination, Ms. Fowler had exaggerated pain response to fibromyalgia throughout the usual trigger points; however, there were no notes indicating malingering.[3] Dr. Pfeifer changed her medications to improve her energy

---

[3] "Exaggerated pain response" in fibromyalgia patients is also known as hyperalgesia. Hyperalgesia is an increased sensitivity to pain, which may be caused by damage to peripheral nerves. *See* FibroCenter, http://www.fibrocenter.com/fibromyalgia-pain.aspx (last visited Sept. 25, 2014). Upon remand, the ALJ should consider seeking clarification regarding the physicians' use of the phrase "exaggerated pain response" as it relates to fibromyalgia, and to Ms. Fowler specifically.

levels, but said he did not typically treat fibromyalgia with narcotics and she would have to continue seeing her pain specialist to obtain narcotics at such a high strength.

On August 1, 2005, Ms. Fowler's pain management doctor, Dr. Joel Hochman, M.D. ("Dr. Hochman"), completed an assessment for Mutual of Omaha in which he diagnosed Ms. Fowler with fibromyalgia based upon the objective findings which meet the American College of Rheumatology criteria, including trigger point tenderness. He noted that she can sit, stand and walk about one hour each in an eight hour workday, is restricted to lifting or carrying less than 10 pounds, limited in her ability to bend and reach, and has secondary depression due to her pain. Dr. Hochman gave Ms. Fowler a global assessment of functioning score of 45, indicating serious impairment. Dr. Hochman completed additional forms for Mutual of Omaha on April 10, 2006, February 8, 2007, August 23, 2007, and April 1, 2008, in which he consistently noted a diagnosis of fibromyalgia based upon objective findings of trigger point tenderness and decreased range of motion. He also noted that Ms. Fowler had attempted several other methods of treatment, including ESIS, physical therapy and acupuncture. Dr. Hochman's prognosis for Ms. Fowler was guarded. With regard to her functional abilities in each of these later assessments, Dr. Hochman noted that Ms. Fowler could only sit for two hours, stand for 30 minutes maximum, and walk for 15 minutes at most in an eight hour workday, and has restrictions in lifting, carrying, using hands for repetitive actions, using feet for repetitive movements, bending, squatting, crawling, climbing, and reaching.

## II.     DISABILITY AND STANDARD OF REVIEW

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). In order to be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work, but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner employs a five-step sequential analysis. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled, despite her medical condition and other factors. 20 C.F.R. § 416.920(a)(4)(i). At step two, if the claimant does not have a "severe" impairment (i.e., one that significantly limits her ability to perform basic work activities) that meets the durational requirement, she is not disabled. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 416.920(a)(4)(iii). In order to determine steps four and five, the ALJ must determine the claimant's Residual Functional Capacity, which is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); SSR 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). At step five, if the claimant can perform any other work in the national economy, she is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

In reviewing the ALJ's decision, this Court must uphold the ALJ's findings of fact if the findings are supported by substantial evidence and no error of law occurred. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). "Substantial evidence means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Id.* Further, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). While the Court reviews the ALJ's decision deferentially, the Court cannot uphold an ALJ's decision if the decision "fails to mention highly pertinent evidence, . . . or that because of contradictions or missing premises fails to build a logical bridge between the facts of the case and the outcome." *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010) (citations omitted).

The ALJ "need not evaluate in writing every piece of testimony and evidence submitted." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993). However, the "ALJ's decision must be based upon consideration of all the relevant evidence." *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ is required to articulate only a minimal, but legitimate, justification for his acceptance or rejection of specific evidence of disability. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).

### III. THE ALJ'S DECISION

As an initial matter, the ALJ found that Ms. Fowler met the insured status requirement of the Act for DIB through December 31, 2008. At step one, the ALJ found that Ms. Fowler has not engaged in substantial gainful activity since her alleged onset date of April 30, 2003. At step two, the ALJ found that Ms. Fowler has the following severe impairments: facial pain, fibromyalgia, hypothyroidism, and degenerative disc disease of the lumbar spine. At step three, the ALJ found that Ms. Fowler does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ concluded that Ms. Fowler has the residual functional capacity to perform light work, except no lifting and/or carrying weight of no more than 20 pounds occasionally, 10 pounds frequently;

no sitting, standing and/or walking for more than 2 hours at a time or for more than 6 out of 8 hours; no more than occasional bending, crouching, crawling, squatting, stooping, driving, climbing of stairs and operating foot controls; no climbing of ladders, ropes and scaffolds; and no working at unprotected heights. At step four, the ALJ determined that Ms. Fowler is capable of performing her past relevant work as a controller, thus finding that Ms. Fowler was not disabled for purposes of the Act from her alleged onset date through the date last insured.

## IV. DISCUSSION

Ms. Fowler generally alleges that the ALJ erred in his analysis of her fibromyalgia, and that the opinion was based upon errors and mischaracterization regarding the medical record. Specifically, the Court finds that the ALJ made errors with respect to 1) the weight afforded to Ms. Fowler's treating physician; 2) failure to adequately support the credibility determination with substantial evidence; and 3) failure to support conclusions with sufficient evidence.

**A.      Failure to give controlling weight to the treating physician.**

The ALJ gave Dr. Hochman's opinions and assessments of Ms. Fowler's work restrictions little weight because they were "conclusory" and "not fully substantiated by the objective findings, imaging studies and clinical findings." [Filing No. 12-2, at ECF p. 56](). Ms. Fowler argues that the ALJ has impermissibly "played doctor" by incorrectly concluding what objective evidence should be found in the medical records to substantiate Dr. Hochman's opinions. The Court finds that the ALJ did not articulate a sufficient basis upon which to discount the opinion of Dr. Hochman and upon which to give the opinion of the consulting physician substantial weight.

Under 20 C.F.R. § 404.1527, the ALJ generally must give more weight to opinions from a claimant's treating sources, and will give the opinion controlling weight if the physician's opinion on the nature and severity of the impairment is "well-supported by medically acceptable clinical

7

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ opts not to give a treating physician's opinion controlling weight, he must apply a number of factors to determine what weight to give the opinion, including 1) the length of the treatment relationship and the frequency of the examination; 2) the nature and extent of the treatment relationship; 3) support by relevant evidence; 4) consistency with the record as a whole; 5) the physician's area of specialization; and 6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 202.1527(c)(2) – (6). The ALJ must "minimally articulate" his reasons for discounting a treating physician's opinion. *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008).

With regard to Dr. Hochman's opinions, the ALJ failed to meet this threshold standard of minimally articulating his reasons for not giving the opinion controlling weight. The ALJ stated that Dr. Hochman's opinions were not substantiated by "objective findings, imaging studies and clinical findings" and were "based primarily on the claimant's reports and subjective complaints." [Filing No. 12-2, at ECF pp. 56-57](). The ALJ also stated that there was "no definitive medical explanation for the claimant's ongoing, severe pain and the continual need for such high doses of narcotic medication." [Filing No. 12-2, at ECF p. 57](). This assessment evidences a fundamental misunderstanding of the nature of fibromyalgia. As the Seventh Circuit has stated, "[i]ts cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). "The term 'subjective' is not intended to be disparaging but only descriptive." *Sandell v. Prudential Ins. Co. of Am.*, 1:06-CV-0522DFHTAB, 2007 WL 4404487, at *2 (S.D. Ind. Dec. 13, 2007) (citing *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004); *Sarchet v. Chater*, 78 F.3d 305, 306-07 (7th Cir. 1996) (discussing

8

fibromyalgia)). "Subjective evidence of pain, therefore, must be accorded serious attention in the process of evaluating the total evidence." *Lee v. Heckler*, 568 F. Supp. 456, 469 (N.D. Ind. 1983). For the ALJ to base his decision on the fact Dr. Hochman's opinions were not based upon "imaging studies and clinical findings," and were primarily based upon Ms. Fowler's subjective complaints, is illogical as there are no objective tests for fibromyalgia, and its diagnosis is necessarily based upon subjective complaints.

The ALJ's conclusion that Dr. Hochman's opinions were not supported by objective evidence also ignores records from Dr. Hochman, Dr. Thornberry, and Dr. Pfeifer, which all state that Ms. Fowler reacted to 18 out of 18 trigger points, which are acceptable objective findings under criteria established by the American College of Rheumatology for diagnosing fibromyalgia. [Filing No. 12-9, at ECF p. 8](#); [Filing No. 12-7, at ECF p. 42](#); [Filing No. 12-15, at ECF p. 50](#); [Filing No. 12-10, at ECF p. 34](#); [Filing No. 12-13, at ECF pp. 49-51](#). The ALJ also discounted Dr. Hochman's opinion regarding Ms. Fowler's limitations on the basis that "none of the other physicians, specialists or medical clinicians that have evaluated, examined or treated the claimant had indicated she was permanently disabled or unable to sustain gainful employment because of her impairments." [Filing No. 12-2, at ECF p. 57](#). This conclusion ignores evidence from Dr. Fuqua, who noted that Ms. Fowler had trouble with even day-to-day activities and "is unable . . . to maintain any type of full time or scheduled employment." [Filing No. 12-18, at ECF p. 39](#). It also ignores an entire line of evidence submitted to Ms. Fowler's disability insurance provider substantiating her inability to work since 2003. *See* Exhibit 25F, [Filing No. 12-15](#) – [Filing No. 12-18](#). The Social Security Administration has explicitly directed ALJs to consider whether other governmental or non-governmental bodies have found an individual to be disabled, even though such decision is not binding on the Commissioner. 20 C.F.R. § 404.1512(b)(5). *See also* Social

9

Security Ruling ("SSR") 06-03p ("[E]vidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.").

The ALJ also took issue with the fact that Dr. Hochman was located in Texas and Ms. Fowler was living in Indiana, stating that his notes were "primarily short telephone conferences" to request additional narcotics, as well as "attempts by Dr. Hochman's office to collect outstanding payments and balance from the claimant."[4]  Filing No. 12-2, at ECF p. 57.  The ALJ ignores evidence that not only did Ms. Fowler speak with Dr. Hochman via telephone monthly, but she also traveled to Houston, Texas quarterly and saw him in person for testing.  Filing No. 12-16, at ECF p. 34.  It also ignores the fact that Dr. Hochman was Ms. Fowler's long-term treating physician, and she had been seeing him since at least 2004 or 2005.  Filing No. 12-15, at ECF p. 48; Filing No. 12-15, at ECF p. 36.  These facts directly contradict the ALJ's conclusion that Dr. Hochman's findings were not based upon updated medical examinations and findings.  Filing No. 12-2, at ECF p. 57.  While this may not be the typical doctor/patient arrangement, the ALJ is not permitted to make adverse findings solely on this basis, and instead must actually consider how frequently Ms. Fowler saw Dr. Hochman.

The ALJ gave the opinion of medical expert Dr. Fischer significant weight; however, his testimony was based upon factual errors and a failure to consider the entire record.  Dr. Fischer testified at the hearing that the "entire record" contradicted Dr. Hochman's opinions, and he did not know how the diagnosis of fibromyalgia was reached.  Filing No. 12-2, at ECF pp. 110-111.  As discussed above, there were several medical records from multiple sources that supported a diagnosis of fibromyalgia, including Dr. Fuqua's statement that she had sent Ms. Fowler to several specialists who all concurred in the diagnosis.  Filing No. 12-18, at ECF p. 39.  In addition, there

---

[4] The Court fails to see how statements about the claimant's medical bill payment history is relevant to the disability determination, but hopes that it was not included for the purpose of disparaging the claimant.

are medical records that contradict Dr. Fischer's testimony that there was no evidence of a fibromyalgia diagnosis going back to 2002 or 2003, including the record from Dr. Thornberry dated July 11, 2003, stating that Ms. Fowler "has evidence on physical examination of fibromyalgia." Filing No. 12-15, at ECF p. 19. Dr. Fischer also doubted the diagnosis of fibromyalgia based upon the records of Dr. Pfeifer at Exhibit 4F-5, testifying that the record indicated "severe fibromyalgia involving the hand," and explaining that fibromyalgia typically does not involve extremities below the elbows and knees. Filing No. 12-2, at ECF p. 111. However, Exhibit 4F-5 states that Ms. Fowler has severe *polyarthralgias* of the hand, not fibromyalgia, and that she had pain spread diffusely throughout her muscles. Filing No. 12-7, at ECF p. 42. Dr. Fischer's statement contradicts several medical records documenting Ms. Fowler's severe fibromyalgia, the ALJ's finding that her fibromyalgia was a severe impairment, and even Dr. Fischer's own report stating that fibromyalgia was a documented impairment. Filing No. 12-14, at ECF p. 103. These are clear misstatements of the evidence upon which Dr. Fischer based his testimony, and upon which the ALJ used to support his findings that Ms. Fowler's treating physician should be given less weight. Therefore, the Court finds that the ALJ committed reversible error in affording Ms. Fowler's long-term treating physician less weight than the medical expert who testified at the hearing.

**B.     The credibility determination is not based upon substantial evidence.**

The ALJ has also committed a number of critical errors in his credibility determination. In examining credibility determinations, the Court will not overturn an ALJ's findings unless it is "patently wrong." *Craft*, 539 F.3d at 678. The ALJ must compare the consistency of a claimant's statements against objective information in the medical record, and the Court will only disturb an ALJ's credibility determination if the finding is unreasonable or unsupported. SSR 96-7p; *Sims v.*

*Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006). "The determination of credibility must contain specific reasons for the credibility finding" and "must be supported by the evidence and be specific enough to enable the claimant and the reviewing body to understand the reasoning." *Craft*, 539 F.3d at 678.

The ALJ found Ms. Fowler's subjective complaints about the intensity, persistence, and limiting effects of her pain to be not credible. However, the ALJ either failed to support these reasons with substantial evidence, ignored contrary evidence, or misstated evidence. First, the ALJ spends much of his credibility determination focusing on his conclusion that the objective medical evidence fails to support Ms. Fowler's allegations regarding the intensity and limiting effects of her pain from fibromyalgia. "An ALJ may properly rely on objective medical and other evidence where it 'sufficiently contradict[s] the credibility of [a claimant's] claims of disability.'" *Cantrell v. Astrue*, No. 3:08-CV-127 CAN, 2009 WL 790181, at *5 (N.D. Ind. Mar. 23, 2009) (quoting *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007)). However, an ALJ may not reject statements about the intensity and persistence of pain or the effect that symptoms have on a claimant's ability to work solely because the available objective evidence does not substantiate her statements. 20 C.F.R. § 404.1529(c)(2).

The ALJ discusses a number of "normal" test results, including a CT scan of the maxillofacial and facial bones showing no abnormal soft tissue masses or adenopathy; normal lumbar spine x-rays; normal MRI of the brain and MRA of the head and neck; normal EMG of the bilateral lower extremities; and a normal neurological examination. Filing No. 12-2, at ECF p. 55. Reliance on a lack of objective medical evidence to find Ms. Fowler not credible completely ignores the nature of fibromyalgia, which, as stated above, necessarily relies upon the subjective complaints of the patient for diagnosis. There are no objective laboratory tests for fibromyalgia,

12

and the one objective test that is accepted—trigger point tenderness—is documented in the evidence. The ALJ also misstates the evidence by neglecting to note that the tests he says are inconsistent with Ms. Fowler's complaints of pain are not tests for fibromyalgia, but rather to rule out other conditions. For example, the MRI and the MRA of the head and neck were for the purpose of diagnosing the cause of Ms. Fowler's vertigo, and the CT scan was to diagnose Ms. Fowler's facial pain. Filing No. 12-9, at ECF p. 55. The ALJ does not cite to any medical evidence that contradicts Ms. Fowler's pain allegations, and it is illogical, and impossible, to require objective medical evidence or testing to support complaints about pain resulting from fibromyalgia. *See Lindley v. Colvin*, No. 2:12-cv-00190-WTL-WGH, 2013 WL 5328238, at *7 (ALJ erred in relying solely upon the objective medical evidence despite the fact that fibromyalgia's symptoms are entirely subjective.). "[D]octors, insurers, and courts must be cautious about the potential for malingering and deception, but they must also recognize that a person can have genuinely severe and chronic pain that defies objective measurement and verification." *Sandell v. Prudential Ins. Co. of Am.*, 1:06-cv-0522-DFH-TAB, 2007 WL 4404487 at *2 (S.D. Ind. Dec. 13, 2007) (citing *Carradine*, 360 F.3d at 753; *Sarchet*, 78 F.3d at 306-07 (discussing fibromyalgia)); *see also Alexander v. Barnhart*, 287 F. Supp. 2d 944, 965 (E.D. Wis. 2003) ("When a claimant has fibromyalgia, it is inappropriate for an ALJ to reject her claims of pain because they are not verified by traditional medical tests."). The Court concludes that the ALJ erred by concluding that the lack of medical testing or other objective evidence was a basis for discrediting Ms. Fowler's complaints about her pain.

Second, the ALJ noted that Ms. Fowler's course of medical treatment was "completely inconsistent" with her subjective complaints, stating that she was only treated with "conservative measures" and there was no indication that she sought out or required "hospitalization, surgery, or

other invasive treatment measures." Filing No. 12-2, at ECF p. 59. The ALJ primarily focused upon Ms. Fowler's use of narcotic pain medication prescribed by Dr. Hochman to treat her fibromyalgia, but failed to note that she had also tried anti-inflammatory medication, acupuncture, ESIS, and physical therapy, which was noted multiple times by Dr. Hochman and elsewhere in the medical records. Filing No. 12-13, at ECF pp. 49-51. Furthermore, there is contradictory evidence in the record indicating that Ms. Fowler had three unsuccessful surgeries by Dr. Gary Wright attempting to alleviate her pain. Filing No. 12-16, at ECF p. 16. The Court questions whether treatment with high doses of narcotics such as OxyContin and methadone can be considered "conservative" treatment. The Seventh Circuit has held that "repeated attempts to seek treatment for [the claimant's] condition supports an inference that [the claimant's] pain, though hard to explain by reference to physical symptoms, was disabling," and it is unlikely that a claimant would undergo pain treatment procedures including "heavy doses of strong drugs such as Vicodin, Toradol, Demerol, and even morphine" merely to strengthen the credibility of the claimant's complaints of pain. *Diaz v. Prudential Ins. Co. of Am.*, 499 F.3d 640, 646 (7th Cir. 2007) (citing *Carradine*, 360 F.3d at 755). The ALJ's claim that Ms. Fowler never sought out hospitalization is contradicted by his own opinion, which states elsewhere that "in 2008, the claimant sought emergency room (ER) services on several occasions secondary to pain complaints and pain symptoms, and was treated with Dilaudid and Phenergan." Filing No. 12-2, at ECF p. 56. The ALJ simply dismissed these ER visits as attempts to obtain narcotics and not treat her pain, but does not cite to any evidence in support of this explanation. With respect to the other treatments the ALJ claims Ms. Fowler failed to pursue, as discussed above, fibromyalgia cannot be treated with surgery or "other invasive measures," although the ALJ ignored evidence that Ms. Fowler did attempt those treatments as well. Thus, the ALJ's reliance upon Ms. Fowler's alleged failure

to seek out more extensive treatment, as well as his disregard of evidence showing that she did pursue other treatments besides narcotics, does not support his finding that Ms. Fowler was not credible.

Third, the ALJ concluded that Ms. Fowler's activities of daily living were not consistent with her claims of disabling pain. He cited activities such as grooming, cooking, laundry, washing dishes, shopping for groceries, taking care of her dog, and driving once per week to find that her statements about her pain were not credible. "The Seventh Circuit has long cautioned against placing undue weight on a claimant's household activities in assessing [her] ability to work outside the home." *Ramos v. Astrue*, 674 F. Supp. 2d 1076, 1094 (E.D. Wis. 2009) (citing *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009)). "A claimant's ability to perform limited and sporadic tasks does not mean she is capable of full time employment." *Goble v. Astrue*, 835 Fed. App'x 588, 592 (7th Cir. 2010). "[I]t is not enough to simply describe a claimant's activities without explaining how they are inconsistent with the pain and limitations [she] claims." *Id.* The ALJ failed to explain how Ms. Fowler's household activities are inconsistent with her claims of disabling pain, and merely stated that she engaged in these activities. The ALJ also failed to consider that Ms. Fowler's two children are adults, and that they help her with household chores. Filing No. 12-2, at ECF pp. 86-87. Thus, the Court concludes that the ALJ failed to support his conclusion that Ms. Fowler's daily activities are inconsistent with her complaints of pain.

Fourth, the ALJ relied upon Ms. Fowler's work history to find that she was not credible. An ALJ may take a claimant's sporadic work history into account in evaluating credibility, and "declining earnings prior to the onset of [a claimant's] alleged disability, coupled with the fact that [the claimant] did not participate in a vocational rehabilitation program, show[s] a lack of effort to find work and, under § 404.1529(c)(3), diminishe[s] [the claimant's] credibility." *Simila v. Astrue*,

15

573 F.3d 503, 520 (7th Cir. 2009). The ALJ stated that Ms. Fowler had a work history beginning in 1977 and ending with her onset date of April 30, 2003, with only four years of zero reported earnings. Twenty-two years of employment out of twenty-six years does not support a conclusion that Ms. Fowler's work history was "sporadic." There is also no indication that Ms. Fowler had declining earnings, or that she left her job for reasons other than disability. Evidence in the record shows that she earned $75-80,000.00 in the year immediately preceding the year she began receiving long term disability benefits, and her earnings had actually increased prior to her leaving her employment. Filing No. 12-16, at ECF p. 4. *Cf. Simila,* 573 F.3d at 520 (ALJ found that claimant's declining earnings in the six years prior to the onset of his alleged disability showed a lack of effort to find work); *Sombright v. Astrue*, No. 10 C 2924, 2011 WL 1337103 (N.D. Ill. Apr. 6, 2011) (claimant's credibility was diminished where she stated that she stopped working because she "no longer wanted to continue doing that type of work" and told ALJ she "just didn't want to work.").

In addition, the ALJ faults Ms. Fowler for not pursuing work at the same or lesser exertional level. However, the ALJ went on to conclude that Ms. Fowler could do her past work as a controller/financial control officer, which is a skilled, sedentary job. It is illogical to expect Ms. Fowler to seek work at a lower exertional level because there is no lower exertional level than sedentary work. The ALJ also ignores the fact that her prior employer, where she worked as a controller, determined that she could no longer perform the duties of the job due to disability, and also ignores Ms. Fowler's repeated statements to her physicians and her disability insurance carrier that she had a desire to return to work. *See*, *e.g.*, Filing No. 12-16, at ECF p. 9 ("I am not going to give up on getting my old life back until I find out if there is anything else causing this that can be cured or if there is anything that I can do to help alleviate the symptoms."); Filing No. 12-16, at

16

ECF p. 10 ("I'm still planning on taking internet classes so I can eventually do something else."); Filing No. 12-16, at ECF p. 14 ("I am going crazy not working and will be taking computer courses online from our local college as soon as possible. I don't plan on living on disability forever."); Filing No. 12-16, at ECF p. 29 ("I am still striving to get well enough to get back to work and am doing all of my physical therapy exercises daily."). The ALJ speculates, without any support, that "there might have been economic incentives preventing her from returning to full-time work." Filing No. 12-2, at ECF p. 60. Contrary to the ALJ's conclusion, there is ample evidence that Ms. Fowler did have a desire to return to work, as evidenced by the numerous e-mails to her disability insurance carrier which were necessarily contrary to her interest in receiving benefits.

The ALJ further discredits Ms. Fowler's work history by claiming that she failed to pursue vocational rehabilitation. However, there is no record of any of Ms. Fowler's physicians recommending that she go to vocational rehabilitation, and there is no indication that vocational rehabilitation would help her overcome or work around debilitating pain. *Cf. Elder*, 529 F.3d at 412 (ALJ found claimant to be not credible where treating physician repeatedly instructed her to go to vocational rehabilitation to get help finding an alternate job that did not require as much physical exertion, refuting claimant's claim that she had no capacity to work). The Court concludes that the ALJ did not provide adequate support for his conclusion that Ms. Fowler was less credible based upon her work history.

C.     **Failure to support conclusions with substantial evidence.**

Finally, the Court notes that the ALJ made a series of unsupported and contradicted conclusions in support of his decision, in addition to those discussed above. The ALJ unduly focused on Ms. Fowler's treatment with heavy narcotics, accusing her of becoming dependent on them and engaging in "drug-seeking behavior." Filing No. 12-2, at ECF p. 59. He also accused

her of going to the emergency room with the goal of obtaining narcotics "to sustain her dependency rather than for the sole treatment of reported/alleged pain and symptoms." *Id.* There is absolutely no evidence cited from the record to support these accusations, and constitutes unsupported speculation by the ALJ. The Seventh Circuit has stated that drug-seeking behavior consists of obtaining, or attempting to obtain, pain medication by "deceiving or manipulating a medical professional." *Kellems v. Astrue*, 382 F. App'x 512, 515 (7th Cir. 2010). Ms. Fowler only obtained her pain medication from one physician, and the ALJ does not cite to any medical records indicating that she was malingering or otherwise attempting to deceive her physicians. The ALJ also stated that "[a]ttempts to treat the claimant's pain complaints with other than narcotic medications have not been followed through and/or carried out to completion, with the claimant continuing to rely on narcotic medications to manage her pain," [Filing no. 12-2, at ECF p. 59](), but again, he does not cite to evidence to support this statement. As previously stated, the medical records actually contradict this conclusion, demonstrating that Ms. Fowler attempted a number of other therapies, but only pain medication alleviated her symptoms; the ALJ even noted himself that methadone has allowed Ms. Fowler to function, still with a pain level of 4 or 5, without any adverse side effects. *Id.*

The ALJ went on to state that Ms. Fowler's course of treatment has been "impeded by her ongoing narcotic dependence and her wishes to remain on narcotic management" and that her "pain and symptoms have not been addressed or treated adequately." *Id.* The ALJ concluded that Ms. Fowler's "ongoing dependence on narcotics and occasional drug-seeking behavior have had a detrimental affect on her pain and symptoms," and her "failure to recognize this fact contributes to her ongoing pain and symptoms." [Filing No. 12-2, at ECF p. 59](). There is no evidence cited from the record to support these conclusions, and the ALJ is impermissibly "playing doctor" by

making such determinations. *See Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) ("[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record."); *Rohan v. Chater*, 98 F.3d 966, 968 (7th Cir. 1996) ("[A]s this Court has counseled on many occasions, ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). The ALJ generally cites to Exhibits 1F through 24F, which constitutes almost 650 pages of the transcript, to "support" his conclusions regarding the adequacy and effect of her treatment. Citation to such a voluminous amount of documentation is hardly sufficient to create a logical bridge between the facts and his conclusions, and does not allow this Court or the claimant to "track the ALJ's reasoning and be assured that the ALJ considered the important evidence." *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995).

As evidenced by the numerous instances where the ALJ ignored or misstated evidence contrary to his conclusions, or failed to cite to any evidence at all, it is doubtful that the ALJ truly considered the entire record. The Court concludes that the ALJ failed to support his conclusions with sufficient evidence, and failed to build an accurate and logical bridge between the evidence and his conclusion that Ms. Fowler was not disabled. Because of these critical errors, the decision of the Commissioner is **REVERSED** and **REMANDED**.

## V. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ did not fairly or accurately consider the evidence in support of Ms. Fowler's claim that she was disabled due to debilitating pain resulting from fibromyalgia, and did not support his findings with sufficient evidence. The ALJ made a series of logical missteps in his reasoning and conclusions that unfairly dismissed Ms. Fowler as merely being a drug addict. "[A]n administrative agency's decision cannot be upheld when the reasoning process employed by the decision maker exhibits deep logical flaws."

19

*Carradine*, 360 F.3d at 756. The Court will not go so far as to conclude that Ms. Fowler is entitled to social security disability benefits; however, the ALJ on remand needs to revisit each step of the disability evaluation process and make a fair, unbiased, and thorough assessment of Ms. Fowler's condition consistent with this Entry. The Court hereby **REVERSES** the decision of the Commissioner, and **REMANDS** this case for further proceedings.

    **SO ORDERED.**

Date: 9/29/2014

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Charles D. Hankey
charleshankey@hankeylawoffice.com

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov